UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GLAZIERS ARCHITECTURAL METAL AND GLASSWORKERS LOCAL 513 and FRANK SCIMO, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:04CV1724 CDP |
| BETHALTO GLASS, INC., | ) ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

Glaziers Architectural Metal and Glassworkers Local Union No. 513 (Local 513) and its business manager, Frank Scimo, brought this action to enforce a grievance committee award that was levied against Bethalto Glass, Inc. pursuant to the parties' collective bargaining agreement. Plaintiffs seek identical relief under both Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, and the Federal Arbitration Act (FAA), 9 U.S.C. § 9.[1] Bethalto

---

[1] Both parties rely on the LMRA and FAA throughout their briefs, however, the only statute applicable in this action is the LMRA. The LMRA governs "suits for violation of contracts between an employer and a labor organization," 29 U.S.C. § 185(a), whereas the FAA explicitly does not apply to collective bargaining agreements between unions and employers. See 9 U.S.C. § 1. Notwithstanding the FAA's inapplicability, federal courts still look to the FAA for guidance in labor arbitration cases. See United Paperworkers Int'l Union, AFL-CIO, et al. v. Misco, Inc., 484 U.S. 29, 41 n. 9 (1987). In their motion for summary judgment, plaintiffs seek judgment only on their LMRA claim.

1

contends that the award should not be enforced due to several alleged improprieties in the committee's hearing and deliberations. Bethalto, however, failed to raise any of these defenses in a motion to vacate within the applicable limitations period. Accordingly, I am precluded from considering them now. For this reason, I will deny Bethalto's motion for summary judgment, and I will grant the plaintiffs' motion for summary judgment.

## Background

Bethalto, a company specializing in general glass and glazing work, is a party to a collective bargaining agreement (CBA) between Local 513 and the Glazing Contractors of the St. Louis, Missouri area. The effective dates of the CBA are November 1, 2003 through October 31, 2008. In Article 20 of the CBA, the parties agreed to the following grievance procedure.

ARTICLE 20 – CONTROVERSY O[R] DISPUTE

In the event during the term of this Agreement, there shall be a controversy or dispute as to the meaning or application of the provisions of this Agreement, there shall be no suspension of work, but all differences shall be referred to a committee within five (5) days of the alleged controversy or dispute.

The Committee will consist of two representatives of the Employer neither of whom may be employees of the Employer involved and both of whom must be representatives of Employers having collective bargaining agreements with this Local Union and two representatives of the Union, other than employees of the Employer involved, who, if

they're unable to reach a conclusion within five (5) days, after its first
consideration, either the Union or the Employer, may request that the
matter be submitted to binding arbitration.

The Union or the Employer may request the office of Federal
Mediation and Conciliation Service to submit a list of seven arbitrators.
From this list, by the Union and the Employer alternatively striking a
rejection, the remaining name shall become the arbitrator.

All expenses of the arbitrator shall be paid equally by the Employer
and the Union, but each side shall bear its own cost of representation
and witnesses.

On July 7, 2004, Frank Scimo, in his capacity as business manager of Local 513, filed a written grievance against Bethalto. The grievance concerned two out-of-area projects that Bethalto completed at Target stores in Lake of the Ozarks, Missouri and Wichita, Kansas. Article 32, section 2, of the CBA provides:

The Contractor or the Employer party to this Agreement, when
engaged in work outside the geographical jurisdiction of the Union
party to this agreement shall employ not less than fifty percent (50%)
of the workers employed on such work from among the residents of the
area where the work is performed, or from among persons who are
employed the greater percentage of their time in such area; any others
shall be employed only from the Employers' home area.

According to Local 513, Bethalto failed to comply with this clause, among others, at either Target store project.

In the grievance, Scimo requested that Ed Slayden, Project Manager for Bethalto, contact Scimo to schedule a hearing pursuant to Article 20. Scimo

instructed Slayden to provide the names of the two company representatives on the grievance committee. On July 27, 2004, Slayden informed Scimo that he would participate in a grievance hearing on August 4, 2004. He also stated that "Verl [Traub] will be one of my representatives the second I am not sure about yet but I will let you know."

On August 4, 2004, Traub, Slayden, Scimo, and Local 513's two representatives, Jim Clancy and Tom Weber, all convened at the offices of Local 513 for the grievance hearing. Slayden had not been able to secure the attendance of a second company representative, so the grievance committee consisted of the union's two representatives, Clancy and Weber, and Bethalto's sole representative, Traub. Slayden was aware at the time that Bethalto was entitled to a second company representative, but participated in the hearing without objection.

Both Scimo and Slayden presented their positions to the three-person grievance committee. Slayden then left the building and Scimo returned to his office, which is located in the same building. After deliberating for over an hour, Clancy informed Scimo that the committee had decided to fine Bethalto $13,000. The committee reached this result by estimating the total number of hours and fringe benefits that Local 513 members would have accrued in the completion of both Target store projects if Bethalto had complied with the CBA. Scimo then spoke

with Local 513's attorney, who advised Scimo that the $13,000 figure was "excessive." With this information, Scimo returned to the hearing room and informed Clancy, Weber, and Traub that based on his interpretation of Article 32 of the CBA, Local 513 should only be entitled to half of the committee's proposed award. Both Clancy and Weber testified that they relied solely on Scimo's interpretation to lower the fine to $6,000.

On August 10, 2004, Scimo notified Bethalto, via letter, "that the decision of the grievance committee was that you were found guilty and fined $6,000." The letter also stated that upon receipt of the payment, Local 513 would turn the money over to Local 513's Health & Welfare Fund. Two days later, on August 12, 2004, Slayden requested a "breakdown" of how the fine was assessed. Scimo did not provide the requested information and instead responded that "I was not party to the calculations the committee made." He did, however, provide the telephone numbers for each of the three committee members in the event Bethalto wished to contact them directly. Bethalto made no attempt to contact these three individuals, contest the award, or otherwise investigate the details of the committee's deliberations until after this lawsuit was filed on December 10, 2004.

On January 27, 2005, Bethalto filed a charge with the National Labor Relations Board (NLRB) alleging that Scimo had failed to provide information

requested by Bethalto. On February 4, 2005, Local 513 responded to Bethalto's charge by stating that Scimo could not provide the requested information because "he has no personal knowledge as to how the fines assessed by the committee correspond to the violations." In this same letter, Local 513 disclosed, for the first time, the ex parte communications that took place between Scimo and the committee after Slayden had been excused from the building.

Both parties filed cross-motions for summary judgment on October 11, 2005. Bethalto raises four main defenses that it claims bar enforcement of the committee's award. First, Bethalto contends that the parties' failure to assemble a four-person grievance committee in accordance with Article 20 invalidates the committee's award. Second, Bethalto argues that the committee's award must be set aside because the award was speculative and not based on facts from the record. Third, Bethalto claims that the award did not "draw its essence" from the CBA because it was punitive in nature, and the CBA does not authorize punitive awards. Finally, Bethalto contends that Scimo's ex parte communications with the committee prejudiced Bethalto and deprived the company of a fair hearing.

## **Discussion**

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences

from the facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).

Local 513 and Scimo contend that the grievance committee's $6,000 award is a final and binding decision that must be enforced under § 301 of the LMRA. Further, the plaintiffs claim that Bethalto is precluded from raising any of its defenses because it could have previously raised these defenses as grounds for vacating the committee's award, and the time for doing so has expired. For the reasons set forth below, I agree.

Under the LMRA, a party that fails to move to vacate an arbitration award within the applicable time period is precluded from defending a subsequent enforcement action on grounds that could have been raised in a motion to vacate the award. <u>Int'l Bhd. of Elec. Workers, Local Union No. 124 v. Alpha Elec. Co., Inc.</u>,

7

759 F. Supp. 1416, 1422 (W.D. Mo. 1991) (citations omitted). See also Domino Group, Inc. v. Charlie Parker Memorial Foundation, 985 F.2d 417, 410 (8th Cir. 1993) (holding that under the FAA, a party's "failure to file a motion to vacate, or correct within three months of either the initial award of the Clarification of Award waived any defenses to confirmation that might be asserted in a timely motion to vacate."). This approach comports with the "policy of promoting quick and final resolution of labor disputes." Alpha Elec., 759 F. Supp. at 1422 (quoting Int'l Bhd. of Elec. Workers, Local Union No. 969 v. Babcock & Wilcox, 826 F.2d 962, 966 (10th Cir. 1987)).

The Uniform Arbitration Act, codified in Missouri as Mo. Rev. Stat. § 435.405, subd. 1, establishes five grounds for vacating an arbitration award. The statute reads as follows:

> Upon application of a party, the court shall vacate an award where:
>
> (1) The award was procured by corruption, fraud or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
>
> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence

8

material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 435.370, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 435.355 and the party did not participate in the arbitration hearing without raising the objection;

but the fact that the relief was such that it could no or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award.

The time for pursuing any of these five options in an action to vacate an arbitration award is "determined, as a matter of federal law, by reference to the appropriate state statute of limitations." Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Amer. (UAW), AFL-CIO v. Hoosier Cardinal Corp., 383 U.S. 696, 705 (1966). In this case, the appropriate Missouri statute is Mo. Rev. Stat. § 435.405, subd. 2. Alpha Elec., 759 F. Supp. at 1422 (citations omitted). This statute provides:

An application under this section shall be made within ninety days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within ninety days after such grounds are known or should have been known.

Mo. Rev. Stat. § 435.405, subd. 2.

It is undisputed that Bethalto learned of the grievance committee's

9

award on August 12, 2004, at the very latest. Bethalto, however, did not raise any objection, in any form, to the committee's award until it filed its Answer and Counterclaim on January 27, 2005. Additionally, Bethalto's challenges to the speculative nature of the committee's award and Scimo's ex parte contacts with the committee were first asserted in Bethalto's October 11, 2005 motion for summary judgment.

Bethalto does not claim, nor could it, that its present defenses could not have been raised in an application to vacate the award under Mo. Rev. Stat. § 435.405, subd. 1.[2] Instead, Bethalto claims that Scimo's evasive response to Bethalto's August 12, 2004 request for details on the committee's award is a sufficient ground

---

[2]A review of Bethalto's four main defenses reveals that they each fall within the scope of one, if not more, of the grounds for vacating an award under 435.405, subd. 1. Bethalto's defense that the grievance committee was comprised of only three individuals, as opposed to the four-person panel provided for in Article 20 of the CBA, could have been raised under either § 435.405, subd. 1(1), (3), or (4). Bethalto's challenge to the speculative nature of the committee's award could have been raised in an application to vacate the award under either § 435.405, subd. 1(1), (2), (3), or (4). Likewise, Bethalto's contention that the committee's award did not draw its essence from the CBA could have been raised under § 435.405, subd. 1(1) or (3). Finally, Bethalto's challenge to Scimo's ex parte communications with the committee, and the corresponding claim of unclean hands, could have been raised in an application to vacate the award under § 435.405, subd. 1(1), (2), or (4).

While Bethalto's first two affirmative defenses – plaintiffs' failure to state a claim upon which relief can be granted and failure to provide information in accordance with § 8(b)(3) of the NLRA, 29 U.S.C. § 158 – could not have been raised in a motion to vacate, both of these defenses must fail. First, viewing all facts and inferences in a light most favorable to the plaintiffs, their complaint does state a claim upon which relief can be granted. Second, Bethalto's NLRA claim falls within the exclusive jurisdiction of the NLRB. See Pace Industries, Inc. v. Nat'l Labor Relations Bd., 118 F.3d 585, 589-90 (8th Cir. 1997).

on which to preserve its defenses under the doctrines of equitable tolling and equitable estoppel.

The doctrine of equitable tolling provides that the applicable statute of limitations begins to run against a plaintiff who, "despite all due diligence, is unable to obtain vital information bearing on the existence of his claim." Chakonas v. City of Chicago, 42 F.3d 1132, 1135 (7th Cir. 1994). To make this determination, a court must ask whether a reasonable person in the plaintiff's shoes would be expected to know of the claim. Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1329 (8th Cir. 1995). The doctrine of equitable estoppel serves to toll the statute of limitations "where the plaintiff knew of the existence of his cause of action, but the defendant's misconduct caused him to delay in bringing suit." Johnson v. Berry, 171 F.Supp.2d 985, 989 (E.D. Mo. 2001) (citation omitted).

Even if these two doctrines applied to the facts of this case, neither of them is sufficient to preserve Bethalto's defenses. As the following discussion demonstrates, Bethalto knew, or should have known, of the majority of its defenses at the time of the grievance committee hearing or shortly thereafter. Thus, Bethalto's failure to raise these defenses within the applicable limitations period cannot be attributed to any misconduct on the part of Scimo.

Bethalto's first defense is that the grievance committee has only three

members, as opposed to the four-person panel provided for in Article 20 of the CBA. Bethalto was well aware of this procedural irregularity before the grievance committee even began their deliberations on August 4, 2004. Bethalto, however, did not raise this defense until it filed its Answer and Counterclaim on January 27, 2005. Bethalto has failed to demonstrate how Scimo's alleged misconduct somehow prevented Bethalto from raising this defense until well over ninety days after Bethalto knew of its existence. Accordingly, this defense is time-barred.[3] See Alpha Elec., 759 F. Supp. at 1424 (defendant's attempt to bar enforcement of arbitration award on the grounds that a witness had lied during his testimony was time-barred under Mo. Rev. Stat. § 435.405, subd. 2, because defendant had known

---

[3]Moreover, even if this defense was not time-barred, Bethalto clearly waived this defense when Slayden agreed to participate in the arbitration hearing despite knowing full well that Bethalto was entitled to place a second company representation on the committee. See Keirnan v. Piper Jaffray Companies, Inc., 137 F.3d 588, 593 (8th Cir. 1998) (holding that party waived their right to challenge an arbitrator's partiality by "weighing their options at the time of [the arbitrator's] amended disclosures and deciding to go forward with her on the panel."); Delta Mining Holding Co. v. AFC Coal Properties, Inc., 280 F.3d 815, 821 (8th Cir. 2001) (same); Cook Industries, Inc. v. C. Itoh & Co. (America) Inc., 449 F.2d 106, 107-08 (2nd Cir. 1971) ("Appellant cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first."). Cf. Food Handlers Local 425, Amalgamated Meat Cutters and Butcher Workmen of North Amer., AFL-CIO v. Pluss Poultry, Inc., 260 F.2d 835, 837 (8th Cir. 1958) (vacating an arbitration award where the arbitration panel lacked a company representative and where there was no evidence that the company had consented to deviate from the parties' agreement that a company representative would participate); Hugs & Kisses, Inc. v. Aguirre, 220 F.3d 890, 893 (8th Cir. 2000) (vacating an arbitration award where one party had unilaterally selected the arbitrator in violation of the parties' agreement and there was no indication that the other party had consented to the alternative arrangement).

about the false testimony at the time of the hearing, which occurred well over ninety days before the defendant first raised its defense).

Bethalto's second defense challenges the speculative nature of the committee's award. According to Bethalto, the committee relied on their own estimates of the number of employees and hours worked on each of the Target store projects rather than on facts presented at the hearing. This defense is premised on the record, or lack thereof, compiled during the hearing. As all three arbitrators testified during their depositions, neither party provided the committee with specifics as to the number of employees and hours worked during the hearing. These deficiencies in the record, and resulting need for estimations by the committee, should have been apparent to Bethalto at the time of the hearing.

To the extent that the facts underlying Bethalto's second defense were not known at the time of the hearing, Bethalto should have discovered them shortly thereafter by contacting members of the committee. While Scimo may not have been particularly forthcoming with his own observations of the committee's deliberations, he did provide Bethalto with the contact information for each committee member. Bethalto, however, made no attempt to contact any committee member until after this lawsuit was filed. Based on this record, there is no reasonable basis to conclude that Bethalto should not have known about the

13

speculative nature of the committee's remedy more than ninety days before Bethalto first raised this defense in its October 11, 2005 motion for summary judgment. See Mo. Rev. Stat. § 435.405, subd. 2. Accordingly, Bethalto is precluded from raising its second defense in the present enforcement action.

The same rationale applies to preclude Bethalto's third defense. In this defense, Bethalto contends that the committee's award does not draw its essence from the CBA because it is punitive in nature. Bethalto relies on the text of Scimo's August 12, 2004 letter, in which he stated that Bethalto had been "found guilty" by the committee and was "fined" for its conduct. Based on the language used by Scimo, as well as the amount of the fine, Bethalto claims that the committee issued a punitive arbitration award. Regardless of the merits of this claim, Bethalto is precluded from raising it as a defense in this action because the evidence on which it is based was known to Bethalto on August 12, 2004, well over ninety days before Bethalto first raised this defense in its January 27, 2005 Answer and Counterclaim. For these reasons, Bethalto's third defense is also time-barred.

Finally, Bethalto raises several defenses challenging the committee's reliance on ex parte contacts with Scimo. I agree with Bethalto that before the disclosure of these contacts in Local 513's response letter to the NLRB on February 4, 2005, Bethalto reasonably believed that Scimo had no role in the committee's

deliberations. Bethalto's belief was reasonable, of course, because Scimo himself had informed Bethalto in his August 12, 2004 letter that he played no part in the committee's calculations.

Nevertheless, Scimo's misconduct did not toll the limitations period on Bethalto's fourth defense indefinitely. The tolling of the limitations periods last only so long as Scimo's misconduct effectively concealed Bethalto's defense. See Johnson v. Berry, 171 F.Supp.2d at 989 ("once sufficient facts are known to trigger a duty to inquire, 'plaintiff is charged with whatever knowledge an inquiry would have revealed'") (quoting Stone v. Williams, 970 F.2d 1043, 1049 (2nd Cir. 1992)).

On February 4, 2005, Local 513 disclosed the following information in its response letter to the NLRB:

> Upon learning that a decision was reached, Mr. Scimo went to the boardroom and was told of the panel's decision to fine Bethalto $13,000.00. Counsel for the Union coincidentally called around this time and Mr. Scimo conveyed the committee's findings to Counsel.
>
> After hearing Counsel's advice, Mr. Scimo voiced his opinion that $13,000.00 was too harsh a fine given half of the work and hours in controversy were performed in Kansas, which is outside of the territory covered in the [CBA]. On or about August 10, 2004, the committee made a decision to fine Bethalto $6,000.00.

As is evident from this passage, Local 513's response letter provided Bethalto with

15

the information that now underlies its unclean hands and prejudicial misconduct defenses.[4] Bethalto, however, did not raise these defenses within ninety days of February 4, 2005. Instead, it waited until October 11, 2005 to finally challenge the committee's ex parte contacts with Scimo. Accordingly, Bethalto is precluded from defending Local 513's current enforcement action on this ground.

In sum, Bethalto failed to raise any of its defenses to the committee's award in a motion to vacate within ninety days of the time at which Bethalto knew, or should have known, of these defenses. Under these circumstances, Bethalto is precluded from defending Local 513's present enforcement action on any of these grounds, regardless of their merit. See <u>Milk Drivers, et al., Local Union No. 387 A/W Int'l Bhd. of Teamsters, AFL-CIO v. Roberts Dairy</u>, No. 4:03-CV-40385, 2004 WL 729117, at *6-7 (S.D. Iowa March 30, 2004) (citing long list of cases).

In the absence of any timely challenges to the grievance committee's award, the award is enforceable under § 301 of the LMRA if it is "the chosen instrument for the definitive settlement of grievances" under the CBA. <u>General Drivers, Warehousemen and Helpers, Local Union No. 89, et al. v. Riss and Co., Inc.</u>, 372

---

[4]Bethalto argues that it could not challenge Scimo's ex parte contacts with the committee "until such time as Scimo was deposed on August 4, 2004 and Clancy and Webber were deposed on August 24, 2005." I disagree. The February 4, 2004 letter clearly described Scimo's improper contact with the committee, and also demonstrated the influence that Scimo had on the committee's final award.

U.S. 517, 519 (1963). The grievance committee's award meets that standard in this case. As discussed above, Bethalto consented to a deviation from the four-person requirement of Article 20 by failing to object at the time of the hearing. The fact that the committee's award decided both liability and remedy, coupled with Bethalto's failure to request that the matter be submitted to binding arbitration in accordance with Article 20, render the award both final and binding. Alpha Elec., 759 F. Supp. at 1421. For these reasons, the committee's award must be enforced.

Finally, I will take up the issue of attorneys' fees, costs, and interest in accordance with the Court's local rules and therefore do not address plaintiffs' request at this time. See E.D.Mo. L.R. 8.02 and 8.03.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Glaziers Architectural Metal and Glassworkers Local Union No. 513 and Frank Scimo's motion for summary judgment [# 20] is granted.

**IT IS FURTHER ORDERED** that defendant Bethalto Glass, Inc.'s motion for summary judgment [# 18] is denied.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

                                                _____
                                                CATHERINE D. PERRY
                                                UNITED STATES DISTRICT JUDGE

Dated this 16th day of February, 2006.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of February, 2006.